UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDUINA HAXHIRAI,

Plaintiff,

- against -

GREYHOUND LINES, INC., ET AL.,

Defendants.

25-cv-9897 (JGK)

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The plaintiff, Eduina Haxhirai, brought this action against Greyhound Lines, Inc. ("Greyhound") and one of its bus drivers, Abraham Moses, asserting claims under New York State law. Among other things, the plaintiff alleges that Moses assaulted and battered her and then lied to the police about it, leading to her false arrest and malicious prosecution, and that Greyhound is vicariously liable for its employee's conduct. Federal jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The plaintiff is a citizen of New York, Greyhound is incorporated in Delaware with its principal place of business in Texas, and Moses is a citizen of New Jersey.

Greyhound moves to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to strike the plaintiff's request for punitive damages. Moses joins that motion as to all claims asserted against him but disputes Greyhound's position that he was

acting outside the scope of his employment. For the following reasons, the defendants' motion is **granted in part** and **denied in part.**

## I.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[1] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Twombly plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court must accept the factual allegations in the

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

## II.

The following facts are taken from the complaint and are accepted as true for the purposes of this motion. The plaintiff, Eduina Haxhirai, frequently travels for acting and modeling work between New York City and Montreal. Compl. ¶¶ 13, 16. On August 9, 2025, the plaintiff booked a same-day Greyhound bus ticket from the New York City Port Authority Bus Terminal for one such trip to Montreal. Compl. ¶¶ 21–23. Shortly before the bus was scheduled to leave at 1:30 p.m., the plaintiff arrived at the gate and tried to board a Greyhound bus. Compl. ¶¶ 26–31. As she did, Moses, who was wearing a Greyhound uniform and sitting in the driver's seat, told the plaintiff to go back to the gate's entrance. Compl. ¶¶ 30–31. The plaintiff complied and remained at the gate's entrance until she saw another employee close the bus's luggage compartment. Compl. ¶¶ 32–34. Fearing that the bus was about to leave without her or that she had the wrong bus, the plaintiff returned to the bus and asked Moses to confirm that the bus was headed to Montreal. Compl. ¶¶ 33–34.

The plaintiff alleges that Moses then "shout[ed] in her face" and "kick[ed] her luggage out of her hand" "without provocation," Compl. ¶¶ 35–36, which caused her to lose her balance on the bus steps, Compl. ¶ 37. The plaintiff

caught herself from falling by grabbing the railing inside the bus. Id. Once she regained her balance, the plaintiff began video recording. Compl. ¶ 38. On the video, the plaintiff asked Moses for an explanation, and Moses responded by "striking her," "knocking her phone out of her hand," and "grabbing hold of her left arm so forcefully that it caused bruises." Compl. ¶¶ 39–40. Next, the plaintiff alleges that Moses "grabb[ed]" her shirt with one hand and "pull[ed] back his other arm" as if preparing to "punch her." Compl. ¶¶ 42–43. After some struggle, the plaintiff broke free from Moses's grip. Compl. ¶ 43.

The plaintiff then called out for bystanders to help her and picked up her phone, which was still recording, from the ground. Compl. ¶¶ 44–45. The plaintiff also asked Moses to call the police, but he instead hit her and "knock[ed] the phone out of her hand." Compl. ¶¶ 46–47. The plaintiff asked Moses again to call the police before calling them herself. Compl. ¶¶ 49, 51.

Soon after, officers from the Port Authority of New York and New Jersey Police Department arrived and spoke separately with the plaintiff and Moses about what had happened. Compl. ¶¶ 55, 57–58. The plaintiff explained to the officers what happened, showed them the marks on her body where Moses had allegedly hurt her, and told them that she would like to press charges. Compl. ¶¶ 58–59. When the officers spoke with Moses, he allegedly lied in retaliation to ensure the plaintiff's arrest, telling the officers that the plaintiff had hit him

in the face. Compl. ¶¶ 61–63, 65. After talking to Moses, the officers told the plaintiff what he had said and arrested them both. Compl. ¶¶ 64, 67–68. In the process, the officers told the plaintiff that Moses had asked to go to the hospital for pain and high blood pressure arising from the incident. Compl. ¶ 69. The plaintiff declined to receive medical treatment at the scene. Compl. ¶ 71.

At the precinct, the plaintiff grew anxious and upset about the "career, liberty, and life" "implications" of Moses's allegedly false statement to the officers, and she had a panic attack and cried in her cell. Compl. ¶¶ 72–76. While she was in her cell, an officer told the plaintiff that Moses "was in the hospital . . . for the supposed injuries" the plaintiff caused, which further distressed the plaintiff. Compl. ¶¶ 78–79. The plaintiff accepted the officers' offer of medical help and a medic examined her. Compl. ¶¶ 80–81. Soon after, the plaintiff learned from an officer that Moses "was [now] fine," and "had been discharged from the hospital," and was in the precinct. Compl. ¶ 82. The plaintiff saw Moses in his cell that night when officers transferred her to central booking. Compl. ¶¶ 83–84. The plaintiff alleges that the night spent in detention "caused her to suffer emotional distress and physical suffering." Compl. ¶ 88.

The next day, August 10, 2025, the plaintiff was charged with and arraigned on felony assault of Moses and released from detention. Compl.

¶¶ 91, 98. On September 18, 2025, the charges against the plaintiff were dismissed. Compl. ¶ 99.

The plaintiff alleges that she experienced and will continue to experience "physical illness" and "emotional anguish" because of her arrest, detention, and prosecution, including "when she encounters law enforcement." Compl. ¶¶ 100–02. The plaintiff also alleges financial harm in the form of forfeited and added travel expenses to Montreal, forfeited birthday party expenses, and the loss of an acting contract and eligibility for union-based work during the pendency of her criminal case. Compl. ¶¶ 103–05. The plaintiff further alleges that the wrongful arrest and malicious prosecution will continue to cause her financial harm, including by limiting her opportunities to work in acting and modeling. Compl. ¶ 106.

**III.**

The plaintiff asserts claims of assault, battery, defamation, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress against Moses and against Greyhound based on vicarious liability. The defendants move to dismiss each of these claims.

**A.**

The defendants move to dismiss the plaintiff's assault and battery claims on four grounds: (1) the plaintiff's allegations are conclusory; (2) the plaintiff

failed to allege intent plausibly; (3) the plaintiff's trespass entitled Moses to use force; and (4) Moses was acting in self-defense.

"An assault is an intentional placing of another person in fear of imminent harmful or offensive contact." United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993). "A battery is an intentional wrongful physical contact with another person without consent." Id. "Assault and battery occurs when a person is [purposefully] placed in imminent apprehension of harmful or offensive bodily contact and there is an actual use of force." Cohen v. Davis, 926 F. Supp. 399, 402 (S.D.N.Y. 1996).

Civil claims for "assault and battery subsume all forms of tortious menacing and unwanted touching," however slight or injurious. United Nat'l Ins. Co., 994 F.2d at 108. That breadth reflects the modest intent these torts require: that is, an intent to make the contact or cause the apprehension, "not to do injury." Tom v. Lenox Hill Hosp., 627 N.Y.S.2d 874, 876 (Sup. Ct. 1995); see also Jeffreys v. Griffin, 801 N.E.2d 404, 409 n.2 (2003); Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001). Intent "may be alleged generally," rather than with particularity, so long as the facts alleged make it plausible. Fed. R. Civ. P. 9(b); see Iqbal, 556 U.S. at 686–87 (2009). Courts may assess that plausibility by asking whether the alleged conduct is better explained by some "obvious alternative explanation." Iqbal, 556 U.S. at 682.

The plaintiff's allegations relating to assault and battery are neither threadbare nor conclusory. Taking the plaintiff's allegations as true, Moses kicked the luggage the plaintiff was holding while yelling at her, causing the plaintiff to lose her balance on the steps of the bus; struck her phone out of her hands twice; and grabbed her shirt and arm forcefully while raising a fist, leaving the plaintiff bruised and in fear of being hit. These are assertions of fact, not "legal conclusion[s] couched as [] factual allegation[s]," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), and they are enough to sustain claims for assault and battery at this stage, see Cohen, 926 F. Supp. at 401–02 (declining to dismiss assault and battery claims where the plaintiff alleged that one defendant grabbed her arm and another blocked her path and grabbed her hand and keys).

Nor can these allegations of contact and threatened contact reasonably be explained as accidental or incidental. The plaintiff alleges that Moses "kick[ed] her luggage out of her hand" while "shouting in her face," Compl. ¶¶ 35–36, and that the plaintiff "[f]ear[ed]" that Moses "was about to punch her" when he raised his fist at her, Compl. ¶¶ 42–43, 108. Moses also allegedly struck the plaintiff's phone out of her hands twice—both times, when the plaintiff was recording the interaction. The yelling and the repeated, responsive contacts and threats, taken as true, plausibly suggest that Moses

knew what he was doing and meant to do it. Cf. Hines v. Westchester County, 170 N.Y.S.3d 483, 484 (App. Div. 2022) (no battery where the defendant officer believed he was touching contraband, not the plaintiff's body); Higgins v. Hamilton, 794 N.Y.S.2d 421, 422 (App. Div. 2005) (no battery where the contact occurred when the defendant tried to grab a shotgun from the plaintiff).

Whether Moses had a reason for his alleged conduct is otherwise irrelevant on a motion to dismiss the claims of assault and battery. A purported absence of reason would not permit the Court to draw a negative inference against the plaintiff or to weigh the credibility of her allegations. See Goldman, 754 F.2d at 1067. And any defensive reason, including defense of self and property, would support dismissal under Rule 12(b)(6) only if the defense were apparent from the facts alleged in the complaint. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998); Giuffre v. Andrew, 579 F. Supp. 3d 429, 449–50 (S.D.N.Y. 2022).

Self-defense and defense of property are not apparent on the face of this complaint. In the complaint, the plaintiff alleges repeatedly that Moses lied to the officers and that the plaintiff did not hit him. The plaintiff also alleges that she initially complied with Moses's instruction to return to the gate's entrance, and that when she came back to the bus, she only asked Moses whether the bus was going to Montreal. Those facts are far afield from Schaeffer v.

Cavallero, 54 F. Supp. 2d 350 (S.D.N.Y. 1999), where the court granted judgment as a matter of law because the plaintiff's refusal to disembark an airplane "was the sole proximate cause of the police-related torts of which he complains." Id. at 352 (emphasis added). In that case, the police grabbed the plaintiff's arms because he would not willingly leave the airplane. See id. In this case, the plaintiff does not allege that Moses escorted her off the bus; she alleges that he kicked her luggage out of her hand and struck her phone from her hand, then struck her phone from her hand again and raised a fist as if to punch her when she was already outside the bus. Setting aside, as the Court must, the Greyhound policy statement on which the defendants rely, which is outside the complaint, the suggestion that Moses's alleged conduct was necessary to remove the plaintiff from the property is unsupported by the complaint and by "common sense." Iqbal, 556 U.S. at 679. Accordingly, the motion to dismiss the plaintiff's assault and battery claims is **denied**.

**B.**

The plaintiff alleges that Moses falsely told the police that she hit him in the face, and that the false report defamed her and caused her false arrest, false imprisonment, and malicious prosecution.

i.

The elements of defamation are: (1) a false statement; (2) "published without privilege or authorization to a third party"; (3) "constituting fault as judged by either a negligence or actual malice standard"; and "injury to the plaintiff in the form of . . . special damages unless it constitutes defamation per se." Obi v. Amoa, 63 N.Y.S.3d 208, 215 (Sup. Ct. 2017); accord Greenberg v. Spitzer, 62 N.Y.S.3d 372, 383 (App. Div. 2017). A statement is defamation per se if it charges the plaintiff with a serious crime. See Laguerre v. Maurice, 138 N.Y.S.3d 123, 129 (App. Div. 2020). A false report to the police that the plaintiff committed an assault charges a serious crime. See Bisogno v. Libertella, 255 N.Y.S.3d 281, 287 (App. Div. 2026). Although statements to the police are protected by a qualified privilege, a showing of actual malice defeats that privilege. See Sagaille v. Carrega, 143 N.Y.S.3d 36, 39 (App. Div. 2021).

Accepting the plaintiff's well-pleaded allegations as true for the purposes of this motion, Moses's statement to the police—that the plaintiff hit him in the face—was false. The plaintiff denies ever hitting Moses. Officers allegedly told the plaintiff that Moses reported that she hit him and "complain[ed] of pain and high blood pressure" because of it. Compl. ¶¶ 65–70. These are not "admission[s]" that Moses was in fact in pain, or that his subsequent request to go to the hospital was warranted. Defs' Mem. at 10. Rather, they are

allegations about the content of Moses's false statement. The defendants ask the Court to ignore those allegations and assume that the police arrested the plaintiff for assault for a reason other than Moses's alleged report. But the Court cannot draw such an inference against the plaintiff on a motion to dismiss, and in any event that assumption is incompatible with the plaintiff's allegation that the officers told her they "had to arrest her" "because of" Moses's report. Compl. ¶ 67.

The parties dispute whether the plaintiff is a public figure, and whether she has plausibly alleged the "actual malice" required for public figures or to overcome a defense of qualified privilege. There are two forms of actual malice: (1) constitutional malice, which is required if the plaintiff is a public figure, see New York Times Co. v. Sullivan, 376 U.S. 254, 279–283 (1964); and (2) common law malice, which, without a showing of constitutional malice, is necessary to overcome a defense of qualified privilege, see Konikoff v. Prudential Ins. Co., 234 F.3d 92, 98 (2d Cir. 2000) (noting that either form of actual malice is sufficient to defeat a defense of qualified privilege). Constitutional malice means either "a high degree of awareness of [the statement's] probable falsity" or "serious doubts as to [its] truth." Meloff v. New York Life Ins. Co., 240 F.3d 138, 146 (2d Cir. 2001). Common law malice means "spite or ill will." Id. "The critical difference between" the two is that constitutional malice focuses "on

the defendant's attitude toward the truth," and common law malice "focuses on the defendant's attitude toward the plaintiff." Konikoff, 234 F.3d at 99.

The plaintiff has plausibly alleged that Moses made his report with both forms of actual malice—namely, the plaintiff has pleaded that Moses knew his statements were false (constitutional malice) and made the statements anyway to retaliate against the plaintiff (common law malice).[2] The plaintiff alleges that Moses acted in retaliation because the plaintiff spoke to the police before Moses did and told them that she wanted to press charges against him. Whether that allegation is credible is a question of fact that the Court cannot decide on this motion. See Zetes v. Stephens, 969 N.Y.S.2d 298, 302 (App. Div. 2013). Moreover, Moses knew whether the plaintiff hit him. If, as the plaintiff alleges, she did not hit him, Moses would have known that his statement to the contrary was false. And unlike the plaintiff in Sagaille, who relied on events after the report to infer malice, see 143 N.Y.S.3d at 40, the plaintiff here alleges facts at the time of the report—her own complaint to the officers and Moses's accusation in response—from which retaliatory motive and knowing falsity can reasonably be inferred. See Matthaus v. Hadjedj, 49 N.Y.S.3d 393, 394 (App. Div. 2017) (allegation that the defendant "knowingly provided false information to the police, in retaliation for a domestic dispute," sufficient at

[2] Because the plaintiff has plausibly alleged both forms of actual malice, the Court declines to decide on this motion whether the plaintiff is a public figure.

the pleading stage); Biro v. Conde Nast, 963 F. Supp. 2d 255, 277–78 (S.D.N.Y. 2013) (actual malice may be shown where the plaintiff plausibly alleges "the defendant has a motive for defaming the plaintiff" or "the words or acts of the defendant before, at, or after the time of the communication indicate that the defendant knew that his or her statement was . . . false"). Accordingly, the motion to dismiss the plaintiff's defamation claim is **denied**.

**ii.**

Under New York law, false arrest and false imprisonment "are two names for the same tort." Holland v. City of Poughkeepsie, 935 N.Y.S.2d 583, 589 (App. Div. 2011). To state a claim for false arrest or false imprisonment, the plaintiff must plausibly allege facts that show: "(1) the defendant intended to confine [her]"; (2) "the plaintiff was conscious of the confinement"; (3) "the plaintiff did not consent to the confinement"; and (4) the confinement was not otherwise privileged." Id.; see also Pelayo v. Port Auth., 893 F. Supp. 2d 632, 639 (S.D.N.Y. 2012). To be held liable for false arrest, a civilian defendant "must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made" by "wrongfully accus[ing] another of criminal conduct." Bisogno, 255 N.Y.S.3d at 287. And although probable cause defeats a claim of false arrest or false imprisonment, "[t]he fact that the police had probable cause to detain the plaintiff based on what [the

civilian defendant] told them does not mean that [the civilian defendant] had probable cause[.]" Wieder v. Home Depot U.S.A., Inc., 172 N.Y.S.3d 474, 478 (App. Div. 2022).

The plaintiff has plausibly alleged that Moses knowingly lied to the officers. The remaining question is therefore whether the officers would have had probable cause to arrest the plaintiff for assaulting Moses without his statement. See De Lourdes Torres v. Jones, 47 N.E.3d 747, 762 (N.Y. 2016). Again, the plaintiff denies having hit Moses and alleges that the officers told her that they "had to arrest her" because of Moses's false statement. Compl. ¶ 67. That is a plausible allegation that the police arrested the plaintiff because of Moses's complaint. Therefore, the defendants' motion to dismiss the plaintiff's claims of false arrest and false imprisonment is **denied**.

**iii.**

To state a claim for malicious prosecution under New York law, the plaintiff must plausibly allege facts that show: (1) "the commencement . . . of a criminal proceeding by the defendant against the plaintiff"; (2) "the termination of the proceeding in favor of the accused"; (3) "the absence of probable cause for the criminal proceeding"; and (4) "actual malice." De Lourdes Torres, 47 N.E.3d at 760. As with false arrest, "[m]erely giving false information to the authorities does not constitute initiation of the proceeding

without an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police," Bisogno, 255 N.Y.S.3d at 288, and that information "instigated the arrest," Wieder, 172 N.Y.S.3d at 478. Likewise, "the plaintiff may show [common law] malice and overcome the presumption of probable cause with proof that the defendant falsified evidence in bad faith and that, without the falsified evidence, the authorities' suspicion of the plaintiff would not have fully ripened into probable cause." De Lourdes Torres, 47 N.E.3d at 762.

The plaintiff has plausibly alleged that Moses knowingly lied to the officers and that his false report brought about her arrest and prosecution. See Bisogno, 255 N.Y.S.3d at 288. The remaining question is therefore whether the proceeding terminated in the plaintiff's favor. In this case, the plaintiff alleges, and the defendants do not dispute, that she was arraigned on August 10, 2025, and that "all charges against her were dismissed" on September 18, 2025. Compl. ¶ 99; see also Pl's Opp. Mem. at 17 (adding that the charges were dismissed "at her first court appearance"). To be considered favorable, the dismissal of charges need not address the merits of the plaintiff's innocence. See Smith-Hunter v. Harvey, 734 N.E.2d 750, 753–55 (N.Y. 2000). Any termination of a criminal prosecution such that the charges may not be brought again qualifies as a favorable termination "so long as the circumstances

surrounding the termination are not inconsistent with the innocence of the accused." Sinagra v. City of New York, 7 N.Y.S.3d 286, 288 (App. Div. 2015); see Smith-Hunter, 734 N.E.2d at 755. In this case, nothing in the complaint suggests that the charges were dismissed in a manner inconsistent with the plaintiff's innocence.

The more precise issue, as Smith-Hunter describes it, is whether the plaintiff has plausibly alleged that the criminal proceeding has been "finally terminated." Smith-Hunter, 734 N.E.2d at 754. Where there is "no indication that the prosecutor abandoned charges against the accused," a dismissal without prejudice is not a final termination of the criminal proceeding. Id.; see MacFawn v. Kresler, 666 N.E.2d 1359, 1359–60 (N.Y. 1996). In this case, the complaint provides little detail about the criminal proceeding or the basis for its dismissal.

On the other hand, the plaintiff alleges that all charges were dismissed on September 18, 2025, and neither side contends that the charges have been refiled. Because more than six months have passed since the plaintiff was allegedly arraigned on the felony assault charge, any effort to re-prosecute her now would likely face a speedy-trial bar under New York Criminal Procedure Law § 30.30. And given how quickly the charges appear to have been dismissed, it could reasonably be inferred that the People did not intend to

pursue them. Ultimately, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012). At this stage, the plaintiff has plausibly alleged that her prosecution was favorably and finally terminated. The defendants' motion to dismiss the plaintiff's malicious prosecution claim is **denied**.

## C.

The plaintiff alleges that Moses's conduct—the assault, the battery, and the false report—constitutes an intentional infliction of emotional distress ("IIED").

To state a claim for IIED under New York law, the plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993)).

The defendants move to dismiss the plaintiff's IIED claim based on the first and fourth elements. The first element is notoriously "difficult to satisfy." Howell, 612 N.E.2d at 702. It requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." Fischer v. Maloney, 373 N.E.2d 1215, 1217 (N.Y. 1978). When multiple acts are alleged, the Court assesses outrageousness "under the totality of the circumstances." See Rich v. Fox News Network, LLC, 939 F.3d 112, 123 (2d Cir. 2019). An IIED claim can be based on conduct that overlaps with other tort claims. Howell, 612 N.E.2d at 702 ("The price for this flexibility in redressing utterly reprehensible behavior . . . is a tort that, by its terms, may overlap other areas of the law."). But an allegation that the defendant made "false statements to the police, causing [the plaintiff's] arrest and incarceration, [is] insufficient as a matter of law to constitute extreme and outrageous behavior." Matthaus, 49 N.Y.S.3d at 394; see also Slatkin v. Lancer Litho Packaging Corp., 822 N.Y.S.2d 507, 508–09 (App. Div. 2006).

The plaintiff has adequately pleaded extreme and outrageous conduct. Apart from Moses's alleged lie to the police that led to the plaintiff's arrest and imprisonment, the plaintiff alleges that Moses "repeatedly" struck her, "grabb[ed] her shirt, knock[ed] her phone from her hand, kick[ed] her luggage, and pull[ed] back his fist in a threatening manner." Compl. ¶ 149. Repeated physical, "undesirable acts" such as these are a "marker[] of outrage," Brown v. Riverside Church in City of New York, 216 N.Y.S.3d 144, 150–51 (App. Div. 2024); see also Chiesa v. McGregor, 176 N.Y.S.3d 687, 691–92 (App. Div. 2022),

and they are distinct from the conduct underlying the plaintiff's defamation, false arrest, and false imprisonment claims, see Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010) (IIED claims based partially on "allegations of providing false information to the police" can suffice if "additional outrageous behavior" is shown); cf. Rickerson v. Porsch, 2019 WL 1289734, at *7 (N.Y. Sup. Ct. Feb. 5, 2019) (IIED claim dismissed as duplicative of defamation claim where no additional outrageous behavior was shown).

The plaintiff has also plausibly alleged facts supporting severe emotional distress, including fear and anxiety. The defendants contend that courts in this Circuit "have [] found that allegations of 'severe and permanent psychological and emotional injuries, including, but not limited to, fear and apprehension of imminent physical harm, humiliation, embarrassment, shame, bouts of screaming, and prolonged agitation;' to be insufficient to state a claim for emotional distress." Defs' Mem. at 18 (quoting Evans v. Anderson, 2025 WL 964112, at *4 (E.D.N.Y. Mar. 31, 2025)). But that list of injuries comes from Cheikhaoui v. City of New York, 2023 WL 5917646, at *11 (S.D.N.Y. Sept. 11, 2023), in which the plaintiff offered only a "conclusory statement collecting symptoms." The court in that case found the allegations insufficient not

because of the nature of the injuries alleged, but because the plaintiff alleged no facts supporting them. See id.

In contrast, the plaintiff in this case has alleged facts about "what emotional distress [she] suffered, how long it lasted, how severe it was, and whether [she] sought medical treatment for the distress." Cheikhaoui, 2023 WL 5917646, at *11 (quoting Winter v. Pinkins, 2016 WL 1023319, at *7 (S.D.N.Y. Mar. 8, 2016)). For example, the plaintiff alleges that she felt fear when Moses kicked her luggage and caused her to lose her balance on the bus steps, felt anxiety at the precinct "during the booking process," grew more upset with the situation when she was searched, and had a panic attack when she "was locked in a cell." Compl. ¶¶ 37–38, 72–75. The plaintiff also alleges that she "accepted the offer" of "medical assistance" at the precinct and that a "medic examined [her] injuries." Compl. ¶¶ 80–82. The plaintiff's factual allegations about the nature of her anxiety and panic attack, stemming from a broad array of physical and verbal conduct, could reasonably be regarded as severe. See, e.g., Shmueli v. Corcoran Group, 802 N.Y.S.2d 871, 877 (Sup. Ct. 2005). On a motion to dismiss, that is enough. See Richard L. v. Armon, 536 N.Y.S.2d 1014, 1016 (App. Div. 1989) ("[D]isputes over the severity of plaintiff's emotional distress are generally resolved by the jury."). Accordingly, the motion to dismiss the plaintiff's IIED claim is **denied**.

## IV.

The plaintiff asserts claims of vicarious liability and common carrier negligence against Greyhound. The plaintiff has consented to the dismissal of her claim of negligent hiring, retention, supervision, or training, and therefore that claim is **dismissed without prejudice**.

### A.

Greyhound moves to dismiss the plaintiff's vicarious liability claim on the grounds that Moses's alleged conduct was neither within the scope of his employment nor for Greyhound's benefit.

To state a claim for vicarious liability against an employer for the conduct of its employee, the plaintiff must plausibly allege that the employee's tortious "acts were committed in furtherance of the employer's business and within the scope of employment." Kwamya v. Lewis, 263 N.Y.S.3d 619, 622 (App. Div. 2026). The tortious conduct itself need not benefit the employer; an employer may be held liable for an employee's negligent or intentional torts "so long as the tortious conduct is generally foreseeable and a natural incident of the employment." Judith M. v. Sisters of Charity Hosp., 715 N.E.2d 95, 96 (N.Y. 1999).

Whether the challenged conduct was within the scope of employment is ordinarily a question of fact that turns on many factors, including "the

connection between the time, place and occasion for the act," "whether the act is one commonly done by such an employee," and "whether the specific act was one that the employer could reasonably have anticipated." Riviello v. Waldron, 391 N.E.2d 1278, 1281 (N.Y. 1979). "[W]here an employee's actions are taken for wholly personal reasons, which are not job related, the challenged conduct cannot be said to fall within the scope of employment." Browne v. Lyft, Inc., 194 N.Y.S.3d 85, 88 (App. Div. 2023). But an employer remains liable for acts related to the employee's duties that have been carried out "irregularly or with disregard of instruction." Ray v. Metro. Transp. Auth., 634 N.Y.S.2d 160, 162 (App. Div. 1995).

The plaintiff has plausibly alleged vicarious liability. The plaintiff alleges that after Moses told her to go to the gate's entrance, she returned to the bus to ask about its destination, and that in response, Moses yelled at her, kicked her luggage out of her hand, hit her phone from her hand, and raised a fist at her while holding her arm. Greyhound concedes that part of a bus driver's duty is to interact with passengers as they enter the bus and to deny them entry when necessary. See Defs' Mem. at 7–8. Taking the plaintiff's allegations as true, Moses interacted with her as she entered the bus and denied her entry. That he allegedly did so tortiously could be viewed as an irregular performance of his duties, and because the alleged conduct grew

directly out of those boarding duties, it could reasonably be found foreseeable. See, e.g., Riviello, 391 N.E.2d at 1281–82 (explaining that "even intentional tort situations have been found to fall within the scope of employment" because the "employer need not have foreseen the precise act or the exact manner of the injury . . . [if] the tortious conduct [was] a natural incident of the employment"). The motion to dismiss the plaintiff's vicarious liability claim is therefore **denied**.

**B.**

Greyhound also moves to dismiss the plaintiff's common carrier negligence claim.

To state a claim for negligence under New York law, a plaintiff must allege that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury. See Doe v. Uber Techs., Inc., 551 F. Supp. 3d 341, 353 (S.D.N.Y. 2021). Common carriers are "subject to the same duty of care as any other potential tortfeasor—reasonable care under all of the circumstances of the particular case." Bethel v. N.Y.C. Transit Auth., 703 N.E.2d 1214, 1218 (N.Y. 1998). Namely, a common carrier must "furnish . . . such service and facilities as shall be safe and adequate and in all respects just and reasonable," N.Y. Transp. Law § 96; "conserve the safety, convenience and comfort of its passengers," Doe,

551 F. Supp. 3d at 357; and "maintain a safe means of ingress and egress for the use of its passengers," Bingham v. N.Y.C. Transit Auth., 864 N.E.2d 49, 51 (N.Y. 2007).

A nongovernmental common carrier breaches its duty to passengers if it fails to reasonably protect them from "known" or "reasonably . . . anticipated" "dangers and risks," including from assault. Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998); see Bethel, 703 N.E.2d at 1216; Weiner v. Metro. Transp. Auth., 433 N.E.2d 124, 125 (N.Y. 1982). "Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues are generally for the fact finder to resolve." Stagl v. Delta Air Lines, Inc., 52 F.3d 463, 474 (2d Cir. 1995).

The plaintiff alleges that Greyhound "failed to provide a safe means of ingress and egress . . . by exposing her to the risk of attack by a tortfeasor." Compl. ¶ 175. Greyhound does not dispute that it owed the plaintiff "a safe means of ingress and egress." Bingham, 864 N.E.2d at 51. Instead, Greyhound responds that it did not breach its duty of care because Moses's conduct was "wholly personal" and therefore "unanticipated." Defs' Mem. at 20. That argument is without merit. The plaintiff has plausibly alleged that Moses's conduct was within the scope of his duties to deny and permit entry to

passengers, and Greyhound has not explained how an assault committed in the course of those duties was unanticipated.

Greyhound also argues that the plaintiff's common carrier claim merely restates the plaintiff's intentional tort claims, and that New York law does not permit negligence and intentional tort claims to be pleaded in the alternative. It is true that "[w]hen a plaintiff asserts . . . assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." Dineen v. Stramka, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002). But the plaintiff's negligence claim does not rest on Moses's intentional conduct. Any vicarious liability Greyhound has for the alleged assault and battery arises from Moses's intentional acts. The negligence claim, however, rests on Greyhound's own conduct—namely, exposing the plaintiff to an employee who Greyhound knew or should have known could be violent towards passengers. New York law does not prohibit a plaintiff from pursuing both of those theories, and the Federal Rules expressly permit it. See Fed. R. Civ. P. 8(d)(2)–(3).

Accordingly, the motion to dismiss the plaintiff's common carrier negligence claim is **denied**.

## V.

The defendants also move to strike the plaintiff's request for punitive damages. That motion is premature.

Motions to strike are disfavored, and "courts should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). Such questions are ordinarily not resolved "on the sterile field of the pleadings alone." Id. Because punitive damages are a form of relief rather than an independent cause of action, a request for them may be stricken at the pleading stage only where "such relief is unavailable as a matter of law." Doe v. Indyke, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020).

Under New York law, punitive damages are "recoverable in an action for assault and battery," and may "be assessed where a defendant's actions evince a high degree of moral culpability or demonstrate a wanton or reckless disregard for the rights of the plaintiff." Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 101 (E.D.N.Y. 2020). "Willful and wanton conduct is a course of action which shows deliberate intention to harm or shows an utter indifference or conscious disregard for the safety of others." Home Ins. Co. v. Am. Home Prods. Corp., 550 N.E.2d 930, 934 (N.Y. 1990).

The plaintiff has plausibly alleged that Moses assaulted and battered her without provocation and then falsely told the police that she had struck him in retaliation for the plaintiff's statement to police about Moses. If proven, those allegations could support an award of punitive damages against Moses. See Antoine, 489 F. Supp. 3d at 101.

The plaintiff has also plausibly alleged that Greyhound knew of Moses's propensity for violence towards passengers and nonetheless exposed passengers to Moses. If proven, a reasonable jury could find that Greyhound acted with "conscious disregard for the safety of" its passengers. Home Ins. Co., 550 N.E.2d at 934. Whether Greyhound in fact acted with conscious disregard, or had no reason to know that Moses might act violently toward passengers, is a fact-specific question that cannot be resolved on the pleadings.

Accordingly, the defendants' motion to strike the plaintiff's request for punitive damages is **denied without prejudice**.

## CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted in part** and **denied in part**. The plaintiff's negligent hiring, retention, supervision, or training claim is **dismissed without prejudice**. The

defendants' motion is **denied** in all other respects. The Clerk is directed to close ECF No. 21.

**SO ORDERED.**

**Dated: New York, New York**
**November 6, 2026**

**John G. Koeltl**
**United States District Judge**